Date signed November 02, 2007



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| In Re: | Case No. 05-29843PM |
| --- | --- |
| | Chapter 7 |
| **Jean-Claude Fotso a.k.a. Jean Fotso and Berthe Fotso a.k.a Berthe Nietcheu Wandji a.k.a. Berthe W. Nietcheu,** | |
| Debtors. | |
| **Carol Blair and Harold Blair,** Plaintiffs, v. **Jean-Claude Fotso and Berthe Fotso,** Defendants. | AP No. 05-09069PM |

## MEMORANDUM OF DECISION

This matter came before the court for trial on August 8, 2007, on the complaint of Carol Blair and Harold Blair for the denial of the Debtors' chapter 7 discharge under 11 U.S.C. §§ 727(a)(2)(A) and (a)(4)(A). For the reasons set forth below, Jean-Claude Fotso and Berthe Fotso will be granted discharges.

### Background

Carol Blair ("Ms. Blair") and Harold Blair ("Mr. Blair") (collectively, "the Blairs") hold the largest general unsecured claim in the bankruptcy case of Jean-Claude Fotso a.k.a. Jean Fotso ("Mr. Fotso") and Berthe Fotso a.k.a Berthe Nietcheu Wandji a.k.a. Berthe W. Nietcheu ("Mrs. Fotso") (collectively, "the Fotsos"). In early 2004, the Fotsos purchased from the Blairs a courier business named Call-A-Courier, Inc. ("Call-A-Courier"). The Fotsos' breach of the

purchase agreement resulted in a judgment entered by the Circuit Court for Montgomery County, Maryland, in favor of the Blairs and Call-A-Courier and against the Fotsos in August 2005.

On December 5, 2005, the Blairs commenced the subject adversary proceeding against the Fotsos by a complaint that included seven counts under 11 U.S.C. § 727(a). By the conclusion of the trial, only causes under 11 U.S.C. § 727(a)(2)(A), alleging concealment of assets, and (a)(4)(A), alleging false oaths with respect to marital status and income, remained.[1]

The Fotsos filed their bankruptcy case under chapter 7 on September 2, 2005, with the assistance of counsel Laura J. Margulies. On Schedule F, the Fotsos listed a disputed judgment in favor of Call-A-Courier and the Blairs, in the amount of $130,658.00 (Dkt. No. 1, p. 12). Schedule I reflected that the Fotsos were married; that Mr. Fotso was a driver for the Brooke Grove Foundation since 2001; and that Mrs. Fotso was a self-employed nurse aid since 2004 (Dkt. No. 1, p. 17). In answering question No. 1 of the Statement of Financial Affairs (Dkt. No. 1, p. 22), the Fotsos disclosed the following income from employment or operation of business:

| AMOUNT | SOURCE | FISCAL YEAR PERIOD |
| --- | --- | --- |
| $16,406.00 | employment wife | 2003 |
| $32,876.00 | employment husband | 2003 |
| $20,871.00 | employment wife | 2004 |
| $21,587.00 | employment husband | 2004 |
| $18,000.00 | employment husband | 2005 |
| $8,000.00 | employment wife | 2005 |

The litigation with Call-A-Courier was disclosed in answering question No. 4 on the Statement of Financial Affairs. Despite disputing the judgment entered against them on August 22, 2005, no appeal was noted (Dkt. No. 1, p. 23).

---

[1] On November 29, 2005, the United States Trustee commenced an action, Adv. Proc. No. 05-09115, under 11 U.S.C. § 727(a)(4) and (a)(5). He alleged that the Fotsos made false oaths with respect to their marriage to one another and to others, understated their income for 2003, and failed to schedule real property. Further, the United States Trustee alleged that the Fotsos failed to satisfactorily explain the loss of assets or deficiency of assets to meet their liabilities. Albeit late, the Fotsos filed an answer denying all material allegations. By consent, the adversary proceeding commenced by the United States Trustee was consolidated for trial with the subject proceeding. Ultimately, by order entered April 24, 2007, the United States Trustee and the Fotsos agreed to dismissal of the action.

On November 9, 2005, the petition (Dkt. No. 8) and Schedules E and I (Dkt. No. 10) were amended. On Schedule E, the Internal Revenue Service was added to reflect federal taxes owed totaling $9,376.72 for Mrs. Fotso and $89,350.29 for Mr. Fotso for the periods ending December 31, 2003, and 2004 (Dkt. No. 10, p. 2). Schedule I purportedly corrected employment information – Mr. Fotso employed as a "contract employee" driver and Mrs. Fotso as a nurse aid with the Brooke Grove Foundation. The term of employment for both of the Fotsos was stated as "currently" (Dkt. No. 10, p. 3).

In December 2005, the Fotsos amended their Statement of Financial Affairs (Dkt. No. 19). The change appeared in the Fotsos' answer to question No. 1. No amount was modified only the descriptions as to Mr. Fotso's income was changed to "adjusted gross income husband" for all periods.

The Chapter 7 Trustee, Janet M. Nesse, designated the case an "asset" case and employed counsel in January 2006 (Dkt. Nos. 20, 23). Several months later, the Fotsos moved to convert the case to one under chapter 13 and, by order entered June 15, 2006, the requested relief was granted (Dkt. No. 34).

The Schedules were amended again on June 27, 2006, with the assistance of new counsel, Richard S. Stolker (Dkt. No. 41). By these amendments, Schedule E reflected joint federal tax debt totaling $31,170.25 with no indication of the pertinent tax year or years (Dkt. No. 41, p. 13) and, on Schedule F, the judgment debt owed to Call-A-Courier was now undisputed (Dkt. No. 41, p. 22). The Fotsos' respective employment was again modified on Schedule I (Dkt. No. 41, p. 19). Mr. Fotso remained a driver; however, now employed by Time Express. Mrs. Fotso provided services to the "Hebrew Home Greater Washington." This second amendment to the Statement of Financial Affairs (Dkt. No. 42, pp. 1-2) reflected the following income:

|   | AMOUNT | SOURCE | YEAR |
|---|---|---|---|
| H | $18,000.00 | Employment - through Sept. 2005 | 2005 |
| H | $23,463.00 | Employment - husband (after audit) | 2004 |
| H | $41,442.00 | Employment - husband (after audit) | 2003 |
| W | $8,000.00 | Employment through Sept. 2005 | 2005 |
| W | $20,871.00 | Employment - wife | 2004 |
| W | $16,406.00 | Employment - wife | 2003 |

The Chapter 13 Plan, filed June 27, 2006, proposed to pay the Internal Revenue Service its priority claim totaling $31,170.25, and anticipated the filing of a motion to avoid the Blairs' judgment lien (Dkt. No. 43). The Fotsos' plan raised an objection by the Chapter 13 Trustee (Dkt. No. 53) and by the Blairs, who asserted that the Fotsos did not file their case in good faith by, among other things, understating income, failing to disclose marriages to others and failing to disclose the repayment of loans (Dkt. No. 66).

On September 22, 2006, the Fotsos again amended the Schedules and Statement of Financial Affairs (Dkt. Nos. 58-9), representing the third amendment to the Statement of Financial Affairs. Schedule I reflected that Mr. Fotso worked for Time Express and Dulles Baggage, earning $4,262.00 monthly and designated such as "[n]et business income" (Dkt. No. 58, pp. 18-9). Mrs. Fotso continued to work for the "Hebrew Home Greater Washington," her net monthly take home pay totaling $2,275.00 (Dkt. No. 58, p. 18). Attached to Schedule I was a projected Monthly Business Income and Expense Report for August 2006, as to Mr. Fotso's gross income and expenses (Dkt. No. 58, p. 20).

On the day of the confirmation hearing, January 16, 2007, a Stipulation and Settlement between the Fotsos and the Blairs was filed that, among other things, limited the Blairs' judgment lien to $100,000.00 (Dkt. No. 94). The Amended Plan conformed with the agreement (Dkt. No. 95). On January 16, 2007, the Amended Plan was confirmed with modifications and the Fotsos' counsel, Richard Stolker, was released from representation (Dkt. No. 96). Two days later, the Fotsos moved to reconvert the case to one under chapter 7 (Dkt. No. 99). Following a hearing on February 6, 2007, this court reconverted the case, noting that the Fotsos' reconversion of the case was against the advice of their former attorney and the Chapter 13 Trustee and that they faced liquidation of all their non-exempt assets and the denial of their discharge as the two adversary proceedings stayed *sine die* would be reactivated (Dkt. Nos. 115-6).

Chapter 7 Trustee Roger Schlossberg was added to the case and, on April 26, 2007, declared the Fotsos' case a "no asset" case. The Fotsos lost the protection of the automatic stay in July 2007, when orders granting Fremont Investment & Loan's motions (as to first and second deeds of trust) were entered (Dkt. Nos. 149-50). A motion to sell the real property was filed by Mr. Fotso on August 8, 2007 (Dkt. No. 158). This motion was denied by the court noting,

among other things, that the Fotsos did not have standing to seek the relief requested as debtors under chapter 7 (Dkt. No. 159).

At the trial of this adversary proceeding, the Fotsos defended the action without the assistance of counsel. The Blairs presented documentary evidence, Exhibits 1 through 59, all of which was admitted as the Fotsos failed to assert objections thereto. Nine exhibits were admitted on the Fotsos' behalf. Exhibit 8 represented the Fotsos' witness list.

Regrettably, the court notes that a significant portion of the evidence presented at trial did not assist the decisional process. The Fotsos failed to testify in any meaningful manner in defense of the allegations and put forward several witnesses whose testimony was not relevant to the issues at trial. The Blairs proffered a paralegal, James Geist ("Mr. Geist"), whose only relationship to the case was that he compiled the exhibits. Indeed, not one of the custodians of records listed on the Blairs' witness list was proffered at trial. No deposition testimony of the Fotsos was offered and the Blairs failed to elicit pertinent testimony from Mr. Fotso on direct examination. In sum, this court was left to scrutinize the documentary evidence before it in order to reach a decision without much assistance from the parties' presentations.

**A.     The Blairs' Exhibits**

   **(1) As to 2003**

Exhibit 17, Mr. Fotso's Form 1040 (U.S. Individual Income Tax Return) for 2003, reflected that he reported as the "head of household,"[2] earning $199,185.00 in "gross receipts or sales" with an "adjusted gross income" of $32,876.00. The court notes that this figure was that disclosed on the initial Statement of Financial Affairs filed on September 2, 2005 (Dkt. No. 1, p.

---

[2] This designation is curious. According to the Internal Revenue Service, Topic 353 - What is Your Filing Status:

> Generally, to qualify for head of household status, you must be unmarried and you must have paid more than half the cost of maintaining as your home a household that was the main home for a qualifying person for more than half the year. You may also qualify for head of household status if you, though married, file a separate return, your spouse was not a member of your household during the last six months of the tax year, and you provided more than half the cost of maintaining as your home a household that was the main home for more than one half of your tax year of a qualifying person.

22).  Exhibit 18, a Maryland Tax Return for the same period, appeared consistent with its federal counterpart.  Exhibit 19, Mr. Fotso's Call-A-Courier Form 1099-MISC for 2003, reflected earnings of $143,404.48 as "nonemployee compensation."

As to Mrs. Fotso, Exhibit 48 contained a copy of a cancelled check paid to the order of "Berthe Nietcheu" for the period ending December 31, 2003, representing a federal tax refund of $4,847.00.

**(2) As to 2004**

Exhibit 4 contained copies of a 2004 Form W-3, Transmittal of Wages and Tax Statements to the Social Security Administration, and Forms W-2, Wage and Tax Statements, issued by Call-A-Courier for Mrs. Fotso and Mrs. Blair, respectively.  The Form W-3, seemingly signed by Mrs. Fotso, reflected "wages, tips, other compensation" totaling $32,508.80.  Mrs. Fotso's Form W-2 for the same period reflected "wages, tips, other compensation" totaling $27,508.80.   Exhibit 34, the Form W-2 issued for 2004, by Brooke Grove Foundation, Inc. ("Brooke Grove") for Mrs. Fotso, reflected wages of $20,871.45 – the same amount disclosed on the Statement of Financial Affairs filed with the petition (Dkt. No. 1, p. 22).  Exhibits 1 through 3 contained copies of cancelled checks issued by Call-A-Courier in 2004, payable to Mrs. Fotso totaling $28,846.35.[3]

Mr. Fotso's Form 1040 for 2004 (again designated filing as "head of household"), Maryland Tax Return and Forms 1099-MISC appeared at Exhibits 20 through 22 and 58 through 59.[4]  In 2004, Mr. Fotso's reported "gross receipts or sales" totaled $170,948.00; he earned $143,283.27 from Call-A-Courier; $12,410.47 from Contractor Management, Inc.; and $15,254.60 from Dulles Baggage Service, Inc. ("Dulles Baggage").  His "adjusted gross income" for 2004, was $21,587.00 – the same amount disclosed on the Statement of Financial Affairs filed on September 2, 2005 (Dkt. No. 1, p. 22).  Exhibits 5 and 6 contained copies of cancelled checks issued by Call-A-Courier in 2004, payable to Mr. Fotso totaling $151,110.88.

---

[3] The court relies upon the summaries prepared by Mr. Geist as to the totals of checks included in the various exhibits.

[4] Exhibit 59 is not a tax document but a statement from Dulles Baggage Service, Inc. regarding sums earned in 2004.

Copies of checks allegedly related to "Tontine" were offered in Exhibits 8 and 9.[5] As to Exhibit 8, the total amount of checks deposited by the Fotsos from "Tontine" sources was $20,240.00, excluding a check written in 2005, payable to Mrs. Fotso for $3,000.00 designated "voyage" and "Tontine."  Exhibit 9 contained checks written by the Fotsos from the Call-A-Courier account to alleged "Tontine" members.

Exhibits 48 and 49 contained Mr. Geists' summarized analysis of funds deposited in the Fotsos' account held at SunTrust, along with supporting bank records from January 2004, through December 2004. The summaries reflected total deposits in 2004, of $245,900.92.

**(3) As to January 1, 2005, through September 2, 2005**

As to Mrs. Fotso, the only tax information admitted for the period ending December 31, 2005, was a Form W-2 issued by Brooke Grove reflecting wages of $19,717.14 (Exhibit 35). Mr. Geist's analysis of direct deposits to Mrs. Fotso's account at Chevy Chase Bank from Brooke Grove was admitted as Exhibit 43. Exhibit 56 contained two checks issued to Mrs. Fotso from Call-A-Courier dated February 2, 2005, and March 25, 2005, respectively. One check was noted for "refund in stamps" and the other "Brenda final pay."

Mr. Fotso's 2005 Form 1040 (designated as "married filing separately"), Maryland Tax Return and Forms 1099-MISC were admitted as Exhibits 23 through 27. According to the tax forms, by year end, Mr. Fotso reported "gross receipts or sales" of $133,507.00 from various sources – Trans USA, Dulles Baggage and Contractor Management, Inc. The "adjusted gross income" for Mr. Fotso for the entire year of 2005, was $27,064.00. As of September 2, 2005, the Statement of Financial Affairs for Mr. Fotso disclosed $18,000.00 (Dkt. No. 1, p. 22). Exhibit 57 contained various checks issued to Mr. Fotso from Call-A-Courier in 2005, many of which were designated "paycheck."

No tax-related information was introduced as to Call-A-Courier for either of the Fotsos for this period.

Exhibits 46 and 47 were copies of cancelled checks negotiated by the Fotsos in 2005, and purportedly documented undisclosed income. These checks were related to "Brendaline Sop."

---

[5] According to the testimony of Jean Marie Takougne, "Tontine" is a small association that pools money together to help members in need.

"Counter Deposits" made to the account at Chevy Chase Bank for 2005, were documented in Exhibit 44.

### (4) Marriages

In support of the allegations that the Fotsos made a false oath as to their marital status, a marriage certificate dated March 16, 1994, issued by the State of Maryland, was admitted at Exhibit 10 and supported, although not referenced, by the testimony of Caroll Wayns ("Mr. Wayns"). Exhibit 13 contains a summons and complaint for absolute divorce of the marriage of Mr. Wayns and Mrs. Fotso. According to Mr. Wayns' testimony, the complaint was dismissed as being filed in the wrong jurisdiction. The court takes away from Mrs. Fotso's cross examination that she disputes the marital union.

Exhibit 11, a copy of a marriage certificate issued by the Commonwealth of Virginia, dated March 14, 1994, was admitted as to the marriage of Mr. Fotso to Gloria Ann Wayns, who coincidentally, or not, shared the same last name of Mrs. Fotso's alleged other spouse. Exhibit 14 reflected that Mr. Fotso and Gloria Ann Wayns were divorced by judgment entered May 5, 1995.

A copy of what purported to be the marriage certificate of the Fotsos to one another issued by the Republique du Cameroun was admitted as Exhibit 12.

### (5) Other

Numerous documents admitted related to periods not at issue or were not useful to the court.[6] Exhibits 51 through 53 and 55 represented copies of the Fotsos' Schedules and Statements of Financial Affairs. As these documents do not reflect the complete record of the

---

[6] Exhibits 36-38 (compensation information for Mrs. Fotso from Brooke Grove for postpetition periods); Exhibits 31-33 (compensation information for Mrs. Fotso from the Hebrew Home of Greater Washington for postpetition periods); Exhibits 15-16 (Mr. Fotso's 2002, tax information); Exhibit 29 (Mr. Fotso's 2006, payment history from Trans Express); Exhibit 30 (copies of checks written by the Fotsos for largely postpetition periods); Exhibit 50 (2006, compensation information for Mr. Fotso from Dulles Baggage and Trans Express); Exhibit 7 (cancelled checks for largely postpetition periods); Exhibit 28 (Mr. Fotso's compensation information from Dulles Baggage for postpetition periods); Exhibit 45 (Mr. Geist's monthly deposit summary for 2004); Exhibits 39-42, 54 (copies of bank statements for accounts held at Chevy Chase Bank and SunTrust).

bankruptcy filings, the court takes judicial notice of the petition, Schedules and Statements of Financial Affairs filed in the bankruptcy case.[7]

**B.     The Fotsos' Exhibits**

The Fotsos' documentary evidence was largely irrelevant.  Exhibit 1 was a copy of the deposition transcript of Mrs. Blair.  No particular portion of the testimony was addressed at trial.  The transcript was apparently introduced for the purpose of showing that the Blairs were attempting to confuse the court, as Mr. Fotso repeated throughout the trial.   Exhibit 2 consisted of records of "Tontine."  These unexplained records were meaningless to the court.  Exhibit 3 contained declarations from various "Tontine" members and copies of cancelled checks.  One member affirmed that funds he paid to the Fotsos were for repayment of loans (Jacob Mfoghom).  The other declarations described payments made by the Fotsos to various "Tontine" members, which did not assist the Fotsos in defense of this action.  Exhibit 4, presumably relating to a refinancing inquiry, was wholly irrelevant, as was Exhibit 5, a copy of a settlement proposal from the Blairs' counsel.  Exhibit 6, copies of notices of intent to levy reflecting unpaid federal income taxes for 2003, and 2004, as well as copies of notices of adjusted state income taxes due as a result of information the Comptroller of Maryland received from the Internal Revenue Service, showed nothing more than the Fotsos owe money for unpaid taxes.  Unfortunate, but irrelevant.  The court could not discern what Exhibit 7 was introduced for but does note that the records therein appear to be for 2007 – a postpetition period not at issue.  Exhibit 9 consisted of several copies of checks written on the Call-A-Courier account to the order of Ms. Blair, Mr. Blair or cash.  The relevance of Exhibit 9 escaped the court.

## Conclusions of Law

Section 727(a)(2)(A) of the Bankruptcy Code provides that a court grant a debtor's discharge unless the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of the property, has transferred, removed, destroyed, mutilated or concealed property within one year before the date of the filing of the petition.  Section 727(a)(4)(A) of the Bankruptcy Code provides that a court grant a debtor's discharge unless the

---

[7] FED. R. EVID. 201(b)(2); In re Calder, 907 F.2d 953, 955 n. 2 (10th Cir. 1990).

debtor has knowingly and fraudulently made a false oath or account in or in connection with the case. These sections include language requiring intent or knowledge.

A plaintiff has the burden of proving an objection to discharge by a preponderance of the evidence. FED. R. BANKR. P. 4005; Grogan v. Garner, 498 U.S. 279 (1991). "Although the burden may shift to the debtor to provide satisfactory, explanatory evidence once the creditor has established a *prima facie* case, the ultimate burden rests with the creditor." Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244, 249 (4th Cir. 1994). These provisions are construed liberally in favor of a debtor and strictly against a creditor. See ALAN N. RESNICK *et al.*, COLLIER ON BANKRUPTCY ¶ 727.01[4] (15th ed. 2007). However, 11 U.S.C. § 727(a) denies a discharge of debts to "those who 'play fast and loose with their assets or with the reality of their affairs.'" Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d at 249 (quoting In re Tully, 818 F.2d 106, 110 (1st Cir. 1987). An objection to a debtor's discharge need prove only one of the grounds enumerated in § 727(a) as the provisions are phrased in the disjunctive. Id. at 250.

**A.    11 U.S.C. § 727(a)(2)(A)**

Section 727(a)(2)(A) provides:

(a) The court shall grant the debtor a discharge, unless–

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
>
> (A) property of the debtor, within one year before the date of the filing of the petition[.]

At final argument, the Blairs focused this court's attention on the Fotsos' alleged "concealment" of property. There was no evidence presented of the transfer, removal, destruction or mutilation of property. The Blairs allege that the Fotsos should be denied their discharge because, in response to Question No. 1 in the Statement of Financial Affairs, Mr. Fotso failed to list his gross income and Mrs. Fotso failed to disclose her prior income from a defunct business, Call-A-Courier.

Concealment of property refers to "[a]ctions in which the debtor retains all preexisting property interests but attempts to keep the property out of reach of creditors or the estate by

secreting or refusing to reveal the location of the property." WILLIAM L. NORTON ET AL., NORTON BANKRUPTCY LAW AND PRACTICE 2d § 74:5 (2007).  Concealment may also be "[p]lacing assets beyond the reach of creditors or withholding knowledge of the assets by failure or refusal to divulge owed information." ALAN N. RESNICK ET AL., COLLIER'S ON BANKRUPTCY ¶ 727.02[6][b] (15th ed. 2007); Comprehensive Accounting Corp. v. Morgan (In re Cycle Accounting Servs.), 43 B.R. 264, 271 n. 12 (Bankr. E.D. Tenn. 1984).

The section requires a showing of actual intent to hinder, delay or defraud and, as phrased in the disjunctive, the actual intent to hinder or delay, even if not fraudulent, may suffice.  Cullinan Assoc., Inc. v. Clements (In re Clements), 205 B.R. 377, 380-1 (W.D. Va. 1995), remanded to 201 B.R. 157 (Bankr. W.D. Va. 1996); Citizens Bank and Trust Co. v. Knott (In re Knott), 32 B.R. 252, 256 (Bankr. E.D. Va. 1983).  Actual intent may be proven by circumstantial evidence or by inferences drawn from the course of conduct.  Siegel v. Weldon (In re Weldon), 184 B.R. 710, 713 (Bankr. D.S.C. 1995) (quoting In re Devers, 759 F.2d 751, 753-4 (9th Cir. 1985)).

At the onset, the Blairs failed to show that the Fotsos concealed property.  Concealment has a broader meaning than the mere hiding of assets and may be found where a debtor places property beyond a creditor's reach by withholding knowledge.  Indeed, on their Statement of Financial Affairs, Mr. Fotso failed to disclose his gross income earned within one year before the date of the filing of the petition and Mrs. Fotso omitted income earned from Call-A-Courier during the calendar year 2004.  However, the Blairs' evidence failed to identify the *res* that was allegedly concealed.  Compare In re Cycle Accounting Servs., 43 B.R. 264;  In re Weldon, 184 B.R. 710; The Cadle Co. v. Ogalin (In re Ogalin), 303 B.R. 552 (Bankr. D. Conn. 2004) (illustrating specifically identified property that was concealed from a period before the petitions were filed and identifiable postpetition).  Under the circumstances of this case, the court declines to equate the non-disclosure of income to concealment of property where there is no evidence that the Fotsos were in possession or control of the income earned before the filing of the petition.  As stated by the court in Anderson v. Hooper (In re Hooper), 274 B.R. 210, 216 (Bankr. D.S.C. 2001), "[t]o determine whether Debtors concealed a property interest, the Court must first decide whether Debtors retained an undisclosed interest in the transferred property."

There has been no showing in this case that the Fotsos retained an interest in the funds rather than having used their income for ordinary living expenses during the statutory period.

Further, the Blairs failed to show any fraudulent intent on the part of the Fotsos. Indeed, the requisite intent may be found from a debtor's failure to disclose pertinent information (In re Weldon, 184 B.R. at 713); however, this court finds that the undisclosed information was not pertinent. The Blairs presented no evidence that the funds earned by the Fotsos were secreted in response to collection efforts or looming debt. The record simply showed that the Fotsos had not accurately disclosed all income earned within one year before the date of the filing of the petition. The Blairs did not present evidence that the Fotsos had retained the income or failed to disclose current income. By merely relying on the Statement of Financial Affairs and a volume of bank records, the Blairs failed to show nefarious concealment. Construing 11 U.S.C. § 727(a)(2)(A) liberally in favor of the Fotsos and strictly against the Blairs, the court finds that the Blairs failed to meet their burden under 11 U.S.C. § 727(a)(2)(A).

**B.     11 U.S.C. § 727(a)(4)**

Section § 727(a)(4)(A) provides:

(a) The court shall grant the debtor a discharge, unless–

(4) the debtor knowingly and fraudulently, in or in connection with the case–

(A) made a false oath or account[.]

The Blairs asserted that the Fotsos made false oaths on their Statement of Financial Affairs by understating their respective income as well as concealing their marriages to others.

Section 727(a)(4)(A)'s purpose is to insure that a debtor supplies complete and reliable information to the bankruptcy court and those interested in the bankruptcy case. Kremen v. Slattery (In re Slattery), 333 B.R. 340, 344 (Bankr. D. Md. 2005). "Creditors are entitled to truthful statements in a debtor's statement of financial affairs so that they may conduct their own investigations of those affairs." Butler v. Ingle (In re Ingle), 70 B.R. 979, 983 (Bankr. E.D.N.C. 1987) (citing In re Cycle Accounting Servs., 43 B.R. at 272).

A plaintiff must show that a debtor knowingly and fraudulently made a false oath or account in or in connection with the case. "In order to be denied a discharge under this section, the debtor must have made a statement under oath which he knew to be false, and he must have made the statement wilfully, with intent to defraud." Williamson v. Fireman's Fund Ins. Co.,

828 F.2d 249, 251 (4th Cir. 1987). The court may infer fraudulent intent from all of the facts and circumstances of the case. Id. at 252. Such determination depends largely on the court's assessment of a debtor's credibility and demeanor. Id.

The false oath or account must be related to a matter material to the estate. "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." Id. at 252 (quoting In re Chalik, 748 F.2d 616, 618 (11th Cir.1984) (per curiam)). The omission of information in the Schedules and Statement of Financial Affairs may constitute a material misrepresentation. See Consumers United Capital Corp. v. Greene (In re Greene), 202 B.R. 68, 74 (Bankr. D. Md. 1996) (omission of bank accounts on Schedule B constituted willful non-disclosure of material facts); Rinker-Detwiler & Assoc., P.C. v. Richman (In re Richman), 168 B.R. 578, 579 (Bankr. D. Md.1994) ("[i]t is certainly true that the omission of facts required to be divulged by the schedules and statement of financial affairs can be a material misrepresentation"). Whether a creditor relied on the false oath is irrelevant when determining materiality. Aetna Ins. Co. v. Nazarian (In re Nazarian), 18 B.R.143, 146 (Bankr. D. Md. 1982) (citations omitted) (rejecting the debtor's contention that his omissions did not satisfy 11 U.S.C. § 727(a)(4) as the creditor was aware of his business transactions). Yet, "where the erroneous statement is not material, the issue of intentional falsehood need not be resolved in order to dispose of the matter." In re Richman, 168 B.R. at 579.

As to Mr. Fotso, this court's review of the documentary evidence against the Statements of Financial Affairs showed that he disclosed "adjusted gross income" rather than gross income for all three years. The Statement of Financial Affairs provides in question No. 1 that a debtor state the gross amount of income earned during the two years immediately preceding the filing of the petition. Mr. Fotso's Forms 1040 for 2003, through 2005 (Exhibits 17, 20 and 23), were consistent with the income disclosed on the Statements of Financial Affairs – albeit "adjusted gross income" rather than gross. Mr. Fotso designated that his income represented "adjusted gross income" by the first amendment to the Statement of Financial Affairs filed on December 16, 2005.

The evidence established that Mr. Fotso incorrectly disclosed his gross earnings. The court believes that it is entirely possible that Mr. Fotso was playing fast and loose with the bankruptcy system; however, a sneaking suspicion of duplicity is not enough. Mr. Fotso testified that he gave information to his lawyer and did not review the Schedules or Statements of Financial Affairs. He had the opportunity and the duty to review the documents before signing same under oath. The misrepresentation cannot be blamed solely on counsel. Nonetheless, this court cannot ignore what appeared to be earnest attempts by Mr. Fotso to truthfully disclose. As they have failed to carry their burden that Mr. Fotso knowingly and fraudulently made a false oath, the court declines to withhold from Mr. Fotso a bankruptcy discharge under 11 U.S.C. § 727(a)(4)(A). Moreover, Mr. Fotso's failure to disclose his gross income rather than net income is not a material misstatement that would lead to assets or income of benefit to his creditors.

As to Mrs. Fotso, the Blairs made a *prima facie* case of a knowing and fraudulent false oath as to undisclosed income on the Statement of Financial Affairs for 2004. For 2003, the only evidence presented was a copy of a tax refund check issued by the Internal Revenue Service (Exhibit 48). For the period January 1, 2005, through the petition date (September 2, 2005), the court infers that the sum disclosed on the Statement of Financial Affairs represents Mrs. Fotso's estimated earnings from Brooke Grove (Exhibit 35) as the only other evidence of allegedly undisclosed earnings admitted were two checks issued to Mrs. Fotso from Call-A-Courier dated February 2, 2005, and March 25, 2005, respectively (Exhibit 56). The court declines to assume that all funds deposited into bank accounts represented income (Exhibits 40, 44, 54).

As to 2004, comparing the 2004 Forms W-2 (Exhibits 4 and 34) to the Statements of Financial Affairs for the same year revealed that the income earned from Call-A-Courier was omitted. The Statement of Financial Affairs filed on the petition date disclosed income for 2004, from "employment wife" totaling only $20,871.00 – the Brooke Grove income as reported on Exhibit 34. Accordingly, Mrs. Fotso omitted income from the Statement of Financial Affairs.

The court infers that Mrs. Fotso was aware of the omission. She earned money from Call-A-Courier in 2004, as reported on the Form W-2 (Exhibit 4). She signed the Form W-3 transmittal to the Social Security Administration that reported those wages (Exhibit 4). Further,

she signed the majority of the checks issued to her by Call-A-Courier that appeared, in light of the amount and frequency, to be salary draws (Exhibit 3).  Although the Statement of Financial Affairs was amended three times, Mrs. Fotso's income was never modified.  Except on the issue of her marriage to Mr. Wayns, Mrs. Fotso chose to remain quiet and failed to offer this court any rebuttal evidence.

      Whether Mrs. Fotso's knowingly false statement was material is the decisive issue.  The court finds it was not material as the misrepresentation did not concern the disclosure of assets or the existence of property.  The funds were earned in the ordinary course and proved to be inconsequential to the estate, particularly as the omitted income was earned from a since defunct business.  There is no evidence that had Mrs. Fotso disclosed the prior income that her creditors would have benefitted or the administration of the estate would have been affected.  Mrs. Fotso failed to truthfully disclose her past financial condition; however, searching for the materiality of the omission and finding none, this court finds that the Blairs have not met their burden to deny Mrs. Fotso her discharge under 11 U.S.C. § 727(a)(4)(A).

      The Fotsos' marital status is worthy of discussion.  This court's focus is on whether the Fotsos are married to one another as 11 U.S.C. § 302 mandates that utilization of a joint petition be limited to spouses.  The Fotsos signed the petition as spouses and represented themselves to be married on Schedule I.  The Blairs presented Exhibit 12, a marriage certificate documenting the marriage of Mr. and Mrs. Fotso to one another in a foreign jurisdiction.  Mr. Fotso referred to Mrs. Fotso as "my wife" on several occasions during the trial and Mrs. Fotso never objected to such representations.  As it is undisputed that the Fotsos are married, the court finds that the Fotsos did not make a false oath with respect to their marriage on the petition or on Schedule I.

**Conclusion**

For the aforesaid reasons, Jean-Claude Fotso and Berthe Fotso will be granted discharges. An appropriate order will be entered.

cc:    Carol Blair and Harold Blair
        6102 Buckler Road
        Clinton, MD 20743

        Walter Thompson Evans
        966 Hungerford Drive
        Suite 12A
        Rockville, MD 20850

        Jean-Claude Fotso and Berthe Fotso
        13101 Cabinwood Drive
        Silver Spring, MD 20904

**End of Memorandum of Decision**